**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| RANDY T. BOOKOUT and ROBIN BOOKOUT, | ) ) | |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 11-1064-MLB |
| | ) | |
| COLUMBIA NATIONAL INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on cross motions for summary judgment. (Docs. 49, 51).  The motions have been fully briefed and are ripe for decision.  (Docs. 50, 52, 53, 54).  The motions are denied for the reasons herein.

**I.   Facts**

Randy and Robin Bookout purchased a home in Fall River, Kansas, in 1995.  The Bookouts obtained a mortgage on the property through Option One Mortgage.  Both Randy and Robin were listed on the mortgage and the warranty deed.  Up until late 2005, both Randy and Robin were also listed on the homeowner's insurance policy.  In 2005, Randy spoke with his independent insurance agent, Joe Novacek, about changing insurance companies for his home due to an increase in his premium.

Novacek filled out an application for Randy Bookout with the Kansas Fair Plan based on his knowledge of Bookout's prior claims history.  The application asked the following question: "Has the applicant, or this location, if known, had any type of loss or losses in the past five years?"  Novacek did not check "yes" or "no," but did

respond that there was a grass fire at the property in 2003 which resulted in a loss of more than $25,000. Novacek, however, did not list an auto theft which resulted in a claim to Randy's automobile insurance carrier. Novacek did not include this claim because the application was for homeowner's insurance and not for automobile insurance. Also, Novacek did not include a claim for hail damage to the home in 2004. The property suffered damages in the amount of $1319 from hail and the insurance company did not pay for the loss because the insurance deductible at the time of the loss was $1600.

After filling out the application, which did not name Robin, Novacek called Randy Bookout and asked him to come to his office to sign the application. On the fourth page of the application, which contains the signature page for Randy, the following appears:

SECTION X - READ AND COMPLETE IN FULL

* * *

In consideration of the Facility [FAIR Plan] agreeing to undertake a survey or surveys and other actions related to possible placement of the described property for insurance purposes, I (we) understand and agree:

1. That this application must be complete in details as to all the questions set forth herein.

2. That the Kansas All-Industry Placement Facility [FAIR Plan] and the Servicing Insurer [Columbia] will rely upon the truth of the information set forth in the application in making its determination whether or not to issue the policy and I (we) certify that all information set forth herein is true and correct. I (we) acknowledge that willful concealment or misrepresentation of material facts may provide grounds for denial of a claim or cancellation of the policy.

* * *

4. That the producer/agent is not an agent of the Kansas All-Industry Placement Facility [FAIR Plan], or the Servicing Insurer [Columbia], or any insurer for the

-2-

purposes of this application and has no authority to bind
insurance.

(Doc. 52, Exh. 1, p. 4).

Below Randy's signature, the application stated: "THIS
APPLICATION DOES NOT CONSTITUTE A BINDER OF INSURANCE.   PRODUCERS DO
NOT HAVE BINDING AUTHORITY."   (<u>Id.</u>)   A policy was issued to Randy
Bookout on October 27, 2005.   The policy contained the following
relevant provisions:

> We do not insure for loss caused directly or indirectly
> by any of the following. Such loss is excluded regardless
> of any other cause or event contributing concurrently or
> in sequence to the loss. These exclusions apply whether
> or not the loss event results in widespread damage or
> affects a substantial area.
>
> * * *
>
> 8. Intentional Loss
>
> Intentional Loss means any loss arising out of any act
> you or any person or organization named as an additional
> insured commits or conspires to commit with the intent to
> cause a loss.
>
> In the event of such loss, neither you nor any such
> person or organization is entitled to coverage, even
> those who did not commit or conspire to commit the act
> causing the loss.
>
> ***
>
> Concealment Or Fraud
>
> We provide coverage to no persons insured under this
> policy if, whether before or after a loss, one or more
> persons insured under this policy have:
>
> 1. Intentionally concealed or misrepresented any material
> fact or circumstance;
> 2. Engaged in fraudulent conduct; or
> 3. Made false statements;
> relating to this insurance.

(Doc. 50, exh. 5 at 5).

The policy provided coverage of $68,000 for the home and $40,000 for personal property.  On April 14, 2010, while the policy was in effect, the house and all personal property in the house were destroyed by fire. No one was injured in the fire.  Randy was questioned by officers and an investigator for the Kansas State Fire Marshal's Department.  Randy denied setting the fire.  Randy told the officers that he had been fishing with chicken livers as bait, using a white fishing pole and that there was dust on the line because he did not throw the line out very far.  Randy, however, recanted those statements during the interview.  Randy instead admitted that he had been drinking at Ladd's Bridge.  Randy also stated that he had been at the home earlier and cooked bacon on a burner for dinner.  While at the interview, Randy's truck was parked at the scene.  The truck contained empty 5-gallon plastic gas cans[1].  The officers also observed a motorhome parked at the property.  The motorhome contained personal documents, four guns, medications, and a cooler containing food.

The fire investigator, John Harrison, completed his investigation and concluded the cause of the fire to be undetermined. Defendant denied plaintiffs' insurance claim on the basis that it believes Randy intentionally set the fire to his home.  Defendant did pay the mortgage company $62,157.71.  Plaintiffs brought this action to recover the policy limits stated in the policy.

Both parties now move for summary judgment.

---

[1] The number of gas cans is controverted.

## II.    Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.  See United Wats, Inc. v. Cincinnati Ins. Co., 971 F. Supp. 1375, 1382 (D. Kan. 1997).  It remains this court's sole objective to discern whether there are any disputes of material fact, see Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each motion separately.  See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

**III. Analysis**

**A.    Defendant's Motion for Summary Judgment (Doc. 51)**

Defendant moves for summary judgment on the basis that plaintiffs' claims are barred pursuant to the policy's concealment or fraud provision because Randy made false statements in the insurance application and to the officers after the fire.

Initially, defendant spends a considerable amount of time briefing the issue of whether Novacek was Randy's agent or defendant's agent. While this may be an interesting question, the court does not find it necessary to resolve. Pursuant to K.S.A. 40-2205(a), an "insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof." While there are exceptions to this statute, see K.S.A. 40-2205(a), those exceptions do not include the type of policy at issue in this case. The policy does not include a copy of the application. Moreover, there is no reference in the policy to statements made in the application. Therefore, Randy is not bound by the statements he or Novacek made in the application.

Moreover, section 40-2205(c) provides that the "falsity of any material statement in the application for any policy covered by this act may not bar the right to recovery thereunder unless the false statement has actually contributed to the contingency or event on which the policy is to become due and payable." In accordance with this statute, Kansas courts have identified several elements which are required in order for an insurer to deny coverage based on a fraudulent misrepresentation in an application. To establish fraud

-6-

in the application context, defendant must prove the following: (1) an untrue statement of fact made by the insured or an omission of material fact, (2) the insured knew the statement was untrue, (3) the insured made the statement with the intent to deceive or recklessly with disregard for the truth, (4) the insurer justifiably relied on the statement, and (5) the false statement actually contributed to the contingency or event on which the policy is to become due and payable. Chism v. Protective Life Ins. Co., 290 Kan. 645, 654-655 (2010). Even if the statements in the application are attributed to Randy, defendant has not satisfied the elements set forth in Chism. While the statements may be untrue, there is no evidence that the statements were made with an intent to deceive, nor any evidence that the statements were relied on by defendant. Moreover, the facts do not support the conclusion that the statements contributed to the loss in this case. Therefore, defendant's motion for summary judgment based on the false statements in the application is denied.

Defendant further contends that plaintiffs' claims are barred because Randy made false statements to officers on the day of the investigation. Defendant cites to the concealment or fraud provision in the policy which allows defendant to cancel coverage when an insured 1) intentionally conceals a material fact, 2) engages in fraudulent conduct[2] or 3) makes a false statement relating to the insurance. While the statements may have been false, defendant has failed to establish that the statements were material, i.e. that

---

[2] Defendant does not contend that the second example applies in this case.

-7-

defendant attached importance to the fact misrepresented.[3]  <u>Pink Cadillac Bar and Grill, Inc. v. U.S. Fidelity and Guar. Co.</u>, 22 Kan. App.2d 944, 954 (1996).  Therefore, defendant has failed to establish that coverage can be denied based on the first example in the fraud exception.  As to the third example, defendant argues that the false statements were made and related to the insurance because Randy ultimately filed an insurance claim.  Defendant cites no authority for this position or support for it in the policy.  In addition, the policy does not define how a statement relates to the insurance.

"Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured." <u>O'Bryan v. Columbia Ins. Group</u>, 274 Kan. 572, 575-576, 56 P.3d 789, 792 (2002).  The court finds the language "relating to this insurance" ambiguous and unclear.  "Where an insurance policy is ambiguous, the construction most favorable to the insured must prevail." <u>Id.</u> at 796.

Randy's statements concerning his whereabouts and activities were

---

[3] Defendant makes several arguments in its brief about how these statements were material and defendant would attach importance to these statements.  The uncontroverted statement of facts, however, do not support defendant's position.   There is a complete lack of evidence as to defendant's own investigation and how that investigation evolved.   In <u>Pink Cadillac</u>, however, the false statements by the insured were made in connection with the insurance investigation and were not instantly revealed as false statements as in this case.  <u>See</u> 22 Kan. App.2d at 954 ("Staab's statements could reasonably have had an impact on USF & G's investigation. The questions USF & G asked Staab were material to its investigation into whether he was involved in the fire and whether the claim should be allowed.")

made during an investigation of a fire, to an officer, almost immediately corrected and without any evidence that the insurance company had been notified at the time of the statements. There is no evidence that Randy made any false statement in connection with a claim under his insurance policy. Moreover, there is no evidence that Randy made a false statement to an insurance investigator in connection with the fire investigation. Construing the language in the policy most favorable to Randy, the court does not find that statements made during a police investigation relate to the insurance policy.

Defendant's motion for summary judgment is therefore denied.[4]

### B. Plaintiffs' Motion for Summary Judgment (Doc. 49)

Plaintiffs move for summary judgment on the basis that defendant cannot meet the elements of its defense of arson. In order to succeed on an affirmative defense of arson, defendant must establish by a preponderance of the evidence that the fire was of an incendiary origin and Randy caused the fire. Neises v. Solomon State Bank, 236 Kan. 767, 776 (1985). This burden may be met with either direct or circumstantial evidence, but cannot be based on speculation and conjecture. Jamaica Time Petroleum, Inc. v. Fed. Ins. Co., 366 F.2d 156, 157-59 (10th Cir. 1966).

Plaintiffs contend that defendant cannot prove that the fire was of an incendiary origin because the fire investigator could not

---

[4] Defendant also seeks a ruling from the court that the applicability of the intentional loss provision or the fraud provision would bar any insured, including Robin Bookout. (Doc. 52 at 20). The parties, however, did not sufficiently brief the issue of reformation and whether Robin Bookout is an insured under the policy in the event of an exclusion. Therefore, these questions will remain for the jury.

determine the cause of the fire due to the complete destruction of the property.  Plaintiffs, however, do not cite to any authority which is factually similar to this case.  There are several facts in dispute and several instances in which Randy was dishonest.  (See Doc. 53 at 23-26).  The court will not list all of the circumstantial evidence here but finds that at this stage of the proceedings there is enough evidence for a reasonable jury to conclude that the fire was intentionally set by Randy.

Plaintiffs' motion for summary judgment is therefore denied.

**IV.  Conclusion**

Plaintiffs' and defendant's motions for summary judgment are denied.  (Docs. 49, 51).  This case will be tried to a jury on November 6, 2012.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.


IT IS SO ORDERED.

Dated this __13th__ day of September 2012, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE


-10-